IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | Civ. No. 09-888-SLR |
| | ) | |
| BAYARD J. SNYDER, AS TRUSTEE OF THE HARRY WISNER IRREVOCABLE LIFE INSURANCE TRUST DATED SEPTEMBER 6, 2006, LANDON STRAUSS and ROBERT FINK, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

David P. Primack, Esquire of Drinker Biddle & Reath LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Charles J. Vinicombe, Esquire and Thomas S. Downie, Esquire of Drinker Biddle & Reath LLP, Philadelphia, Pennsylvania.

John M. Seaman, Esquire of Abrams & Bayliss LLP, Wilmington, DE. Counsel for Defendant Bayard J. Snyder, as Trustee of the Harry Wisner Irrevocable Life Inusrance Trust Dated September 6, 2006. Of Counsel: Steven G. Sklaver, Esquire and Matthew R. Berry, Esquire of Susman Godfrey LLP, Los Angeles, California.

**MEMORANDUM OPINION**

Dated: July  15  , 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On November 20, 2009, plaintiff The Lincoln National Life Insurance Company ("plaintiff") filed the present action against defendants Bayard J. Snyder (the "Trustee"), trustee of the Harry Wisner Irrevocable Life Insurance Trust (the "Trust"); Landon Strauss ("Strauss"); and Robert Fink ("Fink") (collectively, "defendants"). (D.I. 1) Plaintiff alleges in its complaint that defendants fraudulently procured an $18.5 million insurance policy (the "Wisner Policy") on the life of Harry Wisner ("Wisner"). ( *Id.* at ¶ 1) Specifically, plaintiff brings claims of breach of contract, negligent misrepresentation, fraudulent inducement, and fraud against Strauss, along with negligent misrepresentation, fraudulent inducement, and fraud against the Trust.[1] ( *Id.* at ¶¶ 84-117) Plaintiff seeks declaratory judgment that the Wisner Policy: (1) is voidable or void ab initio for lack of insurable interest; (2) was illegally procured; and (3) was procured through material misrepresentation. ( *Id.* at ¶¶ 71-83) Plaintiff also seeks damages and a retainment of some or all of the premiums paid under the Wisner Policy. ( *Id.* at 24-25) The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). Presently before this court is the Trustee's motion to dismiss or, in the alternative, to strike certain allegations. (D.I. 7) For the reasons that follow, the court grants in part and denies in part the Trustee's motion.

---

[1] Plaintiff originally brought a count of aiding and abetting fraud against Fink, but voluntarily dismissed without prejudice all of its claims against Fink on January 4, 2010 pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). (D.I. 5)

## II. BACKGROUND[2]

Plaintiff is a life insurance company with its principal place of business in Indiana. (D.I. 1 at ¶ 4)  The Trustee and the Trust are citizens of Delaware, and both Strauss and Fink are citizens of California.  (*Id.* at ¶¶ 5-7)  Around or before November 25, 2005, Strauss and Fink persuaded Wisner, who was 76 years old at the time, to apply for a life insurance policy.  (*Id.* at ¶ 43)  Strauss was an insurance agent for plaintiff, and Fink served as an intermediary, acting "in concert" with Strauss to procure the Wisner Policy. (*Id.* at ¶¶ 6-7)  Defendants allegedly sought the policy not for any legitimate insurance need, but as a wagering contract to sell to stranger investors on the secondary life insurance market.  (*Id.* at ¶¶ 2, 43)  The market for such schemes, called stranger-originated life insurance ("STOLI") policies, has emerged over the last decade, comparable to unlawful wagering policies that have been around and disfavored by courts for centuries.  (*Id.* at ¶¶ 10-12)  In a STOLI arrangement, speculators collaborate with an individual to obtain a life insurance policy in the name of that individual and then sell some or all of the death benefit payable upon the death of the insured to stranger investors.  (*Id.* at ¶ 11)  In turn, the sooner the insured dies, the more profit these stranger investors are positioned to reap.  (*Id.* at ¶ 15, 18)  To maximize the expected rate of return, STOLI speculators often target individuals who are over the age of 70 and who have a net worth of at least $1 million to apply for the life insurance policies in which they will invest.  (*Id.* at ¶ 14)  The speculators will usually pay for the insured's

---

[2] For purposes of the motion to dismiss or, in the alternative, to strike, the facts as alleged in plaintiff's complaint are assumed to be true.

2

related costs, such as application fees and premiums, and may even pay the insured some compensation upon issuance of the policy. (*Id.* at ¶ 16) In order to conceal the nature of such policies, the insured individual in a STOLI policy will often designate the policyholder and/or beneficiary of the proceeds to be a shell third-party entity. (*Id.* at ¶ 17) In the alternative, the insured individual may designate a legitimate beneficiary, like a close relative, and then transfer the beneficiary interest to a STOLI entity after obtaining the policy. (*Id.*)

As part of the alleged STOLI scheme, Wisner established the Trust on September 6, 2006, naming his wife, Joan Wisner, as the beneficiary. (*Id.* at ¶ 48) On September 12, 2006, Wisner submitted a formal application (the "Application") to plaintiff requesting $18.5 million in life insurance coverage, naming the Trust as the proposed owner and beneficiary. (*Id.* at ¶¶ 49-51) The Application indicated that Wisner had a net worth of $76,900,000 and an unearned annual income of $4,000,000. (*Id.* at ¶ 55) It was signed by the Trustee on behalf of the Trust as the proposed owner; Strauss as the producing agent; and Wisner as the proposed insured. (*Id.* at ¶ 52) Both the Trustee and Wisner answered "no" in response to a question on the Application asking if they had "been involved in any discussion about the possible sale or assignment of this policy to a life settlement, viatical or other secondary market provider." (*Id.* at ¶ 53; D.I. 8, ex. 1 at Application p.3) Strauss also declared on the Application that he had "not been involved in any discussion of the possible sale or assignment of the policy to a life settlement, viatical or other secondary market provider" and that he "[knew] of nothing affecting the insurability of the Proposed Insured[] which [was] not fully recorded in [the] application." (D.I. 1 at ¶ 58; D.I. 8, ex. 1 Application at 6)

3

The end of the Application contained an agreement and acknowledgement clause that read:

> Each of the Undersigned declares that:
>
> . . . .
> 6. I HAVE READ, or have had read to me, the completed Application for Life Insurance before signing below. All statements and answers in this application are correctly recorded, and are full, complete and true. I UNDERSTAND that any material false statements or material misrepresentations may result in the loss of coverage under the policy.[3]

(D.I. 8, ex. 1 at Application p.6) Accordingly, plaintiff asserts that the signatories – the Trustee, Strauss, and Wisner – all understood that they were required to provide truthful responses to the questions in the Application and that plaintiff would rely on their responses in determining whether to issue a policy. (D.I. 1 at ¶ 57) In reliance on the representations made in the Application, plaintiff initially issued the Wisner Policy on October 6, 2006, with a face value of $18.5 million and with the Trust as the owner and beneficiary. (D.I. 1 at ¶¶ 57-59; D.I. 8, ex. 1 at 3)

On October 12, 2006, Strauss submitted an Amendment to the Application (the "Amendment")[4] for the Wisner Policy, signed by the Trustee and Wisner, stating:

---

[3] Plaintiff misquotes the Application's agreement and acknowledgement in its complaint. (D.I. 1 at ¶ 56 ("All statements and answers in this application are correctly recorded, and are full, complete and true **to the best of my knowledge and belief**.")) (emphasis added) Plaintiff concedes this error in its response brief and requests the court allow it to amend the mistake if necessary. (D.I. 14 at 33, n.23) Given this record, it is not necessary.

[4] The Trustee seeks to strike the allegations based on the Amendment. (D.I. 8 at 37; D.I. 17 at 18-19) Ordinarily, on a motion to dismiss, a court may not consider documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. However, if a contract or essential document, whose authenticity is not challenged, is the basis of a complaint, it is incorporated by reference and properly relied on by the court on a motion to dismiss. *See, e.g., In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997) (explaining that a document forms the basis of a claim if it is "integral to or explicitly relied upon in the complaint); *see also In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the

Neither I nor any person or entity on my behalf are [sic] receiving any
compensation, whether via the form of cash, an agreement to pay money
in the future, or a percentage of the death benefit.

. . . .

I am purchasing insurance for my benefit and the benefit of my personal
beneficiaries.

. . . .

The premiums are not being advanced, loaned or financed by a third
party.

(D.I. 1 at ¶ 54; D.I. 8, ex. 2) Following the receipt of the Amendment, plaintiff issued an

Endorsement changing the policy date, issue date, and effective date of the Wisner

Policy from October 6, 2006 to October 18, 2006.[5] (D.I. 14, ex. 4) The Trust paid the

first premium of $1,044,140 by wire transfer on or about October 12, 2006, then paid

---

plaintiff's claims are based on the document.") (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

The plain language of the complaint also suggests that the Amendment and Application were relied on by plaintiff in issuing the contract for the Wisner Policy on October 18, 2006, and the court may rely on that contract. (D.I. 1 at ¶¶ 55-59) Under Delaware law, "[n]o application for the issuance of any life or health insurance policy or annuity contract shall be admissible in evidence in any action relative to such policy or contract, unless a true copy of the application was attached to or otherwise made a part of the policy or contract when issued." 18 Del. C. § 2710(a) (2010). According to the terms of the contract, the Amendment was attached to and included in the Wisner Policy. The Application's agreement and acknowledgement clause contained a declaration that "[t]his Application consists of . . . any amendments to the application(s) attached thereto" (D.I. 8, ex. 1 at Application p.6), and the proposed policy issued on October 6, 2006 contained the Amendment form for the Trust and Wisner to sign and return (D.I. 8, ex. 1 at Amendment to Application for Insurance). In addition, the proposed policy itself provided: "This policy, the attached copy of the application and/or endorsements, and any attached supplemental applications and riders form the entire contract." (D.I. 8 at 6) Finally, the Endorsement, issued by plaintiff after receipt of the Amendment, clearly provided that the new policy date, issue date, and effective date for the Wisner Policy were all October 18, 2006. (D.I. 14, ex. 4) It further provided: "This Endorsement is **attached to and becomes a part of** Your policy." (*Id.*) (emphasis added)

To the extent the Trustee wants to strike the Amendment completely, for the rest of litigation, that is an issue of contract interpretation, to be decided on summary judgment, or an evidentiary issue, to be determined on a motion in limine. Plaintiff, therefore, may rely on the Amendment to support its contentions at this stage.

[5] Plaintiff and the Trustee contest the Wisner Policy's issue date due to the submission of the Amendment. For a discussion of this matter, see footnote 4, *supra*.

5

additional premiums of $250,000 and $310,000 before Wisner's death.  (D.I. 1 at ¶¶ 60-61)

In connection with the Wisner Policy, plaintiff paid Strauss a total of $951,865.73 and Advanced Planning Services a total of $297,778.07 in commissions.  (*Id.* at ¶ 62) Strauss worked as an "executive general agent" for plaintiff pursuant to an Agent Contract signed by him and plaintiff's Executive Vice President on June 29, 2006.  (D.I. 1 at ¶ 36; D.I. 14, ex. 1)  In the Agent Contract, Strauss agreed to "solicit applications for Life insurance on behalf of [plaintiff] using guidelines provided by [plaintiff];" to not "violate any published [plaintiff] policy on viatical sales;" and to "abide by the terms and conditions of any rules relating to [plaintiff's] business as may be published, or contained on [plaintiff's] Web site, from time to time."  (D.I. 1 at ¶¶ 37-39; D.I. 14, ex. 1) Plaintiff's policies at the time prohibited Strauss, or anyone else, from producing STOLI policies.  (D.I. 1 at ¶ 40)  Yet, according to plaintiff, Strauss, along with Fink, "engaged in a pattern and practice of executing STOLI schemes to fraudulently procure life insurance policies . . . ."[6]  (*Id.* at ¶ 41)  Plaintiff alleges that Strauss and Fink solicited stranger investors to invest in the Wisner Policy both prior to entering into the Agent Contract and prior to submission of the Application.  (*Id.*)  The concealment of his activities induced plaintiff into entering the Agent Contract with Strauss and into paying his agent commissions.  (*Id.* at ¶ 42)

---

[6] Plaintiff's complaint provides details of another policy it suspected of being a STOLI arrangement – the "Teren Policy."  (D.I. 1 at ¶¶ 19-42)  After litigation (the "Teren Action"), the Teren Policy was declared fraudulent and void ab initio by the Superior Court of the State of California, San Diego County.  *Lincoln Life and Annuity Co. of New York v. Teren*, Civ. No. 37-2008-83905-CU-CO-CTL (Sup. Ct. San Diego County August 27, 2009).  During discovery in the Teren Action, plaintiff found that Strauss and Fink were involved in the Teren STOLI scheme.  (*Id.* at ¶ 30)  Plaintiff alleges that Strauss and Fink offered stranger investors the opportunity to invest in the Wisner and Teren Policies as a "package."  (*Id.* at ¶ 44)

6

Wisner died on September 11, 2008 at age 79. (*Id.* at ¶ 63) The Trust filed a claim for Wisner's death benefit in November 2008, after which plaintiff initiated a contestable death claim investigation (the "Claim Investigation"). (*Id.* at ¶¶ 64-65) Plaintiff talked to Wisner's son and best friend, Steven B. Wisner, on March 6, 2009 during the Claim Investigation regarding the financial condition of Wisner and the purpose of the Wisner Policy. (*Id.* at ¶¶ 66-67) In June 2009, plaintiff obtained a typed statement from Steven B. Wisner stating that: (1) he did not know the amount of his father's annual income or net worth; (2) he recognized Strauss's name because he had tried to obtain insurance through Strauss before; (3) he recalled Strauss mentioning a policy sale to his father but did not know they had become connected; (4) Fink's name was familiar to him but for uncertain reasons; (5) he did not know who paid the premiums on the Wisner Policy; (6) he did not know his father suggested a trust be established in connection with the Wisner Policy; (7) the beneficiary interest in the Trust was sold to an unknown party; and (8) his father received compensation in connection with the transfer of beneficiary interest. (*Id.* at ¶ 68) The Claim Investigation also revealed – based on Wisner's federal income tax returns for 2005, 2006, and 2007 – that Wisner's earned and unearned income did not support the representations made in the Application. (*Id.* at ¶¶ 55, 69)

## III. STANDARD

Pursuant to Federal Rule of Civil Procedure 9(b), a heightened pleading standard applies to fraud claims, requiring that "in all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168. 207 (Del. Ch. 2006) (alterations in original), *aff'd sub nom., Trenwick Am. Litig. Trust v. Billet*, 931 A.2d 438 (Del. 2007). Federal Rule of

7

Civil Procedure 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

In a diversity action, the court must first address the threshold issue of which law governs the rights and liabilities of the parties before it. For substantive issues, the court looks to the substantive law of the forum state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The forum state's choice of law doctrine is included within its substantive law. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Kruzits v. Okuma Machine Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994). Under the law of Delaware, the law of the place where an insurance contract was made governs the obligations imposed by such contract.[7] *Wilmington Trust Co. v. Mut. Life Ins. Co. of New York*, 177 F.2d 404, 406 (3d Cir. 1949).

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations of the non-moving party as true and draw all reasonable inferences in its favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A court may consider the pleadings, public record, orders, and exhibits attached to the complaint. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (interpreting Fed. R. Civ. P. 8(a)) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide

---

[7] Both parties' briefs argue the issues under Delaware law and, if facts regarding where the Wisner Policy was made are not contested, Delaware law will govern.

the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545 (alteration in original) (citation omitted).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.*  Furthermore, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.*

## IV. DISCUSSION

Plaintiff argues that the Wisner Policy is void ab initio or voidable due to:  (1) lack of insurable interest at inception; (2) its illegal procurement under applicable law; and (3) material misrepresentations in the Application.  (D.I. 1 at ¶ 3)  To the extent that defendants were involved in fraud, fraudulent inducement, aiding and abetting fraud, negligent misrepresentation and/or breach of contract, plaintiff seeks compensatory and punitive damages, as well as retainment of some or all of the premiums paid on the Wisner Policy.  (*Id.*)  In his motion to dismiss or, in the alternative, to strike, the Trustee asserts that:  (1) each of plaintiff's claims fails because plaintiff is deemed to have full knowledge of the alleged misrepresentations; (2) plaintiff is estopped from rescinding the policy; (3) the Wisner Policy is not void or voidable due to lack of insurable interest; (4) plaintiff's fraud and misrepresentation claims fail because plaintiff did not adequately plead loss causation; (5) plaintiff failed to allege fraud with sufficient particularity; (6) plaintiff's fraud and misrepresentation claims are time-barred; (7) plaintiff cannot simultaneously seek to rescind the contract and seek damages on the same contract;

and (8) to the extent any claims are permitted to stand, the court should strike several of

plaintiff's allegations because they are immaterial to the litigation. (D.I. 8; D.I. 14)  For

the reasons that follow, the court grants in part and denies in part the Trustee's motion.

### A. Imputation of Strauss's Knowledge to Plaintiff

"Delaware law states the knowledge of an agent acquired while acting within the

scope of his or her authority is imputed to the principal." *Albert v. Alex. Brown Mgmt.*

*Servs., Inc.*, Civ. Nos. 762-N and 763-N, 2005 WL 2130607, at *11 (Del. Ch. Aug. 26,

2005); *see also Curtis, Collins & Holbrook Co. v. United States*, 262 U.S. 215, 222

(1923) ("The general rule is that a principal is charged with the knowledge of the agent

acquired by the agent in the course of the principal's business.").  The Trustee argues

that any knowledge Strauss had regarding the alleged fraud or misrepresentations

related to the Wisner Policy are imputable to plaintiff because of the principal-agent

relationship, which bars plaintiff from bringing any of its claims.  Plaintiff counters that

Strauss's fraud and knowledge are not imputable because he was acting outside the

scope of his authority and he was acting as an independent contractor, not an agent.[8]

Furthermore, plaintiff contends that the adverse interest exception to the principal-agent

---

[8]  Plaintiff argues that Strauss could not have been acting as plaintiff's agent because his Agent Contract explicitly categorized him as "an **independent contractor** and not an employee of [plaintiff]." (D.I. 14, ex. 1 at 1) (emphasis added)  However, the same contract also classifies Strauss as an "executive general **agent**." (*Id.*) (emphasis added)  "[T]he general rule is that the liability of an independent contractor may not be imputed to the principal," but "[s]erving concurrently as an agent and as an independent contractor is not mutually exclusive."  Anne M. Jayne, "Independent Contractors," 41 Am. Jur. 2d § 2.  "The distinction drawn between these terms [agent and independent contractor] centers on the principal's right of control over the activities of the agent[]." *Barnes v. Towlson*, 405 A.2d 137, 138 (Del. Super. 1979) (citing Restatement of Agency 2d, §§ 2(2) and 2(3)).  Because determining whether Strauss was an agent or independent contractor necessarily presents an issue of fact, the court will not resolve this issue for purposes of the motion to dismiss.

10

relationship should apply because Strauss was acting in his own self-interest in profiting off of the alleged STOLI scheme.

Assuming for purposes of this motion practice that Strauss was acting as an agent, the court agrees that the adverse interest exception applies to prevent imputation of Strauss's fraud or knowledge to plaintiff. "Under agency law, the knowledge of an agent is generally imputed to his principal **except when the agent's own interests become adverse**." *MetCap Secs. LLC v. Pearl Senior Care, Inc.*, Civ. No. 2129, 2007 WL 1498989, at *10 (Del. Ch. May 16, 2007) (emphasis added); *see also In re HealthSouth Corp. S'holders Litig.*, 845 A.2d 1096, 1108 n.22 (Del. Ch. 2003) ("An exception to the general rule that the knowledge of an officer or agent will be imputed to the corporation arises when an officer . . . is acting in a transaction in which he is personally or adversely interested or is engaged in the perpetration of an independent fraudulent transaction, where the knowledge relates to such transaction and it would be to his interest to conceal it."). In concealing the alleged fraud or misrepresentations related to the Wisner Policy, Strauss was acting out of his own self interest – the financial misrepresentations on the Application were allegedly made to obtain a higher face value policy, which in turn generated higher commissions for him and a higher investment vehicle for the defendants' alleged STOLI scheme.

Applying the adverse interest exception to prevent imputation of Strauss's fraud and knowledge to plaintiff in this case is also consistent with public policy concerns. The rationale behind imputation of an agent's knowledge to a principal is "the presumption that an agent has discharged his duty to disclose to his principal all material facts coming to his knowledge as to the subject of his agency." *KE Property Mgmt., Inc. v. 275 Madison Mgmt. Corp.*, Civ. No. 12683, 1993 WL 285900, at *5 (Del.

11

Ch. July 21, 1993). This rationale fails when the agent has an adverse interest which, by its very nature, he seeks to conceal from his principal. Plaintiff has sufficiently alleged such active concealment on Strauss's part. (D.I. 1 at § 42) Furthermore,

> [i]n Delaware, well settled agency law provides [that] where an agent acquires knowledge in the course of his or her agency and has no personal interest in the transaction adverse to the interest of the principal, any knowledge of or notice to the agent is chargeable to the principal whether or not knowledge or notice is actually communicated to the principal. This rule promotes the underlying policy of holding accountable one who transacts his business through another for what the other does or does not do in conducting that business. The principal should bear the burden rather than a third party who has dealt with the agent to the third party's detriment.

*Ambrose v. Thomas*, Civ. No. 90C-03-020, 1992 WL 208478, at *2 (Del. Super. Mar. 13, 1992). Where the third party, in this case Wisner, has allegedly dealt with Strauss to his benefit rather than detriment, the principal should not bear the burden of the agent's fraud or misrepresentation.

### B. Estoppel of Rescission

The Trustee argues that plaintiff is estopped from rescinding the Wisner Policy for two independent reasons: (1) plaintiff failed to timely disclaim coverage; and (2) plaintiff elected to retain premiums after it obtained knowledge of the alleged fraudulent misrepresentations. The court finds neither argument to be an appropriate basis to grant the Trustee's motion to dismiss.

#### 1. Timely disclaiming coverage

Plaintiff initiated the current case on November 20, 2009, more than one year after Wisner's death, which the Trustee urges should bar plaintiff's rescission action. He cites Delaware law, which provides:

> There shall be a provision that when the benefits under the policy shall become payable by reason of the death of the insured, settlement shall be

12

made upon receipt of due proof of death and, at the insurer's option, surrender of the policy and/or proof of the interest of the claimant. **If an insurer shall specify a particular period prior to the expiration of which settlement shall be made, such period shall not exceed 2 months from the receipt of such proofs.**

18 Del. C. § 2914 (2010) (emphasis added). The Trustee asserts that the two-month period serves as a benchmark set by the Delaware legislature on the reasonable amount of time for settling claims and that, because plaintiff failed to timely disclaim coverage, its rescission claim is barred by law. For support, the Trustee cites *Gaffin v. Teledyne, Inc.*, Civ. No. 5786, 1990 WL 195914, at *17 (Del. Ch. Dec. 4, 1990), *aff'd in relevant part*, 611 A.2d 467 (Del. 1992), in which the court, barring a stockholder's claim for rescission against a defendant corporation, commented that "[i]t is a well-established principle of equity that a plaintiff waives the right to rescission by excessive delay in seeking it." However, the delay in question in *Gaffin* was three years, during which the stockholder had the chance "to sit back and 'test the waters,' waiting to assert a claim for rescission after [defendant's] stock price had increased . . . ." *Id.* By contrast, plaintiff's delay was much shorter in this case and does not raise the same equitable concerns.

"It is plaintiff's burden to prove promptness, not defendant's to prove delay." *Id.* at *18. Plaintiff at bar has alleged sufficient facts for promptness in seeking rescission of the Wisner Policy. First, the Wisner Policy did not specify any particular settlement period so, by the statute's plain meaning, the two-month period does not apply as a legal bar. In addition, plaintiff's delay in filing the present action was due in part to the Claim Investigation, which it began following submission of the death claim and continued prior to commencement of this action. Under 18 Del. C. § 2724(3) (2010), "investigating any loss or claim under any policy" does not "constitute a waiver of any

13

provision of a policy or of any defense of the insurer thereunder." Therefore, the alleged

facts in the complaint support plaintiff's reasonable promptness in filing its rescission

action.

### 2. Retainment of premiums

In the alternative, the Trustee argues that plaintiff cannot maintain its action for

rescission because it chose to retain premiums even after obtaining knowledge of the

alleged STOLI scheme.  The Trustee, however, is unable to reference any Delaware

precedent for this argument.  In contrast, under Delaware law,

> there are cases where the complete administration of justice between the
> parties does not require the return of property acquired under a fraudulent
> contract, in order that it may be rescinded.  That is true when the
> defrauded party has received nothing under the contract which it was not
> entitled, **in any event**, to retain, or what it has received is utterly
> worthless, and of no possible use or benefit to the defendant.

*Eastern States Petroleum Co. v. Universal Oil Prods. Co.*, 49 A.2d 612, 616 (Del. Ch.

1946) (emphasis added) (citations omitted).  Plaintiff's situation falls under the first

scenario because it may, depending on the outcome of this action, be entitled to retain

the premiums collected on the Wisner Policy.  In the event the policy is rescinded,

plaintiff must refund the premiums, as discussed *infra*, and in the event the policy is

deemed valid, it may retain the premiums.  Therefore, plaintiff is not barred from

bringing the action for rescission simply because it has retained the premiums thus far.[9]

### C. Insurable Interest in the Wisner Policy

---

[9] This ruling is consistent with the ruling, *infra*, that should the Wisner Policy be
rescinded, plaintiff must return the premiums as a matter of equity to return the parties
to their status quo prior to the contractual arrangement.

14

A separate issue arises as to whether plaintiff has sufficiently pled facts alleging a lack of insurable interest.  The court finds that plaintiff has sufficiently pled facts to state a claim that the Wisner Policy was void ab initio for lack of any insurable interest.

Delaware law prohibits procurement of life insurance if the insured does not have an insurable interest.  18 Del. C. § 2704(a) (2010).  An insurable interest is defined as benefits that are payable to individuals related closely by blood or by law who have a substantial interest out of love and affection; or to any other individual with a lawful and substantial interest in having the life, health or bodily safety of the insured continue.  18 Del. C. § 2704(c) (2010).  The Trustee contends that:  (1) under Delaware law, the trustee of a trust established by an individual also has an insurable interest in the life of that individual; and (2) Wisner was entitled to name the trust as the owner and beneficiary because he had an insurable interest in his own life.  See 18 Del. C. § 2704(c) (2010).  While there is no doubt an insured can name his own trust as the owner and beneficiary, the insurable interest doctrine developed in common law and out of public policy concerns that deem insurance policies without an insurable interest at inception to be illegal wagering contracts.  "[Wagering contracts] have a tendency to create a desire for the [death of the insured].  They are, therefore, **independently of any statute on the subject**, condemned, as being against public policy."  See Warnock v. Davis, 104 U.S. 775, 779 (1881) (emphasis added).

Wagering contracts have long been condemned as being against public policy. Id. at 779; see also, e.g., Herman v. Provident Mut. Life Ins. Co. of Philadelphia, 886 F.2d 529, 534 (2d Cir. 1989); North American Co. for Life and Health Ins. v. Lewis, 535 F. Supp. 2d 755, 759 (S.D. Miss. 2008).  The insurable interest requirement emerged in order "to curtail use of insurance contracts as wagering contracts by distinguishing

15

between contracts that sought to dampen the risk of actual future loss and those that instead sought to speculate on whether some future contingency would occur." *Sun Life Assurance Co. of Canada v. Paulson*, Civ. No. 07-3877, 2008 WL 451054, at *2 n.4 (D. Minn. Feb. 15, 2008) (citation omitted).  The Supreme Court has long ago explained that a wagering contract "gives the [policyholder] a sinister counter interest in having the life come to an end." *Grigsby v. Russell*, 222 U.S. 149, 154 (1911).

Lack of insurable interest is an issue that arises only at the time of policy procurement.  18 Del. C. § 2704(a) (2010) ("[N]o person shall procure or cause to be procured any insurance contract upon the life or body of another individual unless the benefits under such contract are payable to the individual insured or his/her personal representatives or to a person having, **at the time when such contract was made**, an insurable interest in the individual insured.") (emphasis added).  However, neither the Third Circuit nor the Delaware Supreme Court has addressed what constitutes a lack of insurable interest at the time of policy procurement, and no clear consensus has emerged across jurisdictions regarding this issue.[10]  *Compare Paulson*, 2008 WL 451054 at *1-*2 (holding, under Minnesota law, that a mutual intent of the insured and a third party to avoid the prohibition on wagering contracts is required to allege lack of insurable interest), *with Lincoln Nat'l Life Ins. Co. v. Calhoun*, 596 F. Supp. 2d 882, 890 (D.N.J. 2009) (finding that unilateral intent was sufficient in alleging an insurable interest challenge).

---

[10] It is also well established that, so long as the insured does not initially take out the policy as a mere cover for a wager, the beneficial interest may be legally transferred, after procurement, to an individual or entity without an insurable interest. *See, e.g.*, *Product Clearing v. Angel*, 530 F. Supp. 646, 648 (S.D.N.Y. 2008) (citing *Grisby*, 222 U.S. at 154-56).

In support of its complaint for finding the Wisner Policy lacked an insurable interest at inception, plaintiff has alleged that: (1) Strauss and Fink approached Wisner to participate in a STOLI scheme for the benefit of stranger investors (D.I. 1 at ¶ 43); (2) Strauss solicited strangers, with the help of Fink as an intermediary, to invest in the Wisner Policy prior to submission of the Application (*Id.* at ¶ 41); (3) material misrepresentations were made on the Application regarding Wisner's income, net worth and purpose for the policy in order to conceal the STOLI nature of the policy (*Id.* at ¶¶ 2, 41, 53-55); (4) plaintiff found evidence of the misrepresentations during a contestable death claim investigation after Wisner's death (*Id.* at ¶¶ 65-69); (5) plaintiff also found evidence that the beneficiary interest in the Trust was sold (*Id.* at ¶ 68); (6) stranger investors paid the premiums on the policy and compensated Wisner for his participation in the alleged STOLI scheme (*Id.* at ¶¶ 54, 68); (7) Strauss and Fink helped obtain the Teren Policy, which was found by a California court to be have been fraudulently procured and void ab initio for lack of insurable interest (*Id.* at ¶¶ 21, 22-23, 33-35); (8) Strauss and Fink solicited investors to invest in the Wisner Policy and the Teren Policy as a package (*Id.* at ¶ 44).

Absent a lack of insurable interest at **inception**, it is legal for a policyholder to transfer beneficial interest in a policy. The court finds that the complaint sufficiently alleges, beyond a speculative level, that there was an arrangement in place, at the time of procurement, to transfer the Wisner Policy. In the eyes of the court, plaintiff's allegations regarding a lack of insurable interest meet the *Iqbal* plausibility standard.

## D. Issues Pertaining to the Fraud and Misrepresentation Claims

The Trustee further asserts that the fraud and misrepresentation claims raised against it in counts III, V, VI, and VII of the complaint should be dismissed under three

17

alternative theories:  (1) plaintiff failed to adequately plead loss causation; (2) plaintiff failed to plead the "knowledge and belief" standard against the Trustee; (3) plaintiff failed to plead fraud with particularity; and (4) the fraud and negligent misrepresentation claims are time barred.

### 1. **Loss causation requirement**

The Trustee argues in this regard that plaintiff did not allege its losses were actually caused by the Trustee's alleged misrepresentations. The Trustee frames the loss causation issue to require "plaintiff to prove not only that 'but-for' [the Trustee's] alleged misrepresentations [plaintiff] would not have issued the Policy, but also that [the Trustee's] alleged misrepresentations caused the alleged harm – the payment of death benefits." (D.I. 8 at 22) Under Delaware law, the prima facie elements of common law fraud and misrepresentation are:  "(1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as the result of such reliance." *Stephenson v. Capano Development, Inc.*, 462 A.2d 1069, 1074 (Del. 1983); *see also Simons v. Cogan*, 549 A.2d 300, 304 (Del. 1988) (reciting the same elements but specifically requiring that the plaintiff reasonably relied on the misrepresentation to its detriment). Therefore, the causation requirement under common law fraud and misrepresentation is measured by the relationship between plaintiff's reliance and plaintiff's loss.[11]  In its complaint, plaintiff has asserted that

---

[11] Plaintiff cites several Delaware securities fraud cases in support of its argument that it only needs to show it has been harmed as a result of its reliance on the Trustee's misrepresentations. Although securities fraud law differs from other law, "[t]he

18

defendants' financial misrepresentations in the Application were "false and grossly overstated in order to procure a high face amount life insurance policy, which [Wisner] could not otherwise obtain." (D.I. 1 at ¶ 55) Furthermore, plaintiff alleges that defendants concealed the STOLI nature of the Wisner Policy and planned for the premiums to be advanced or financed by a third party, in contravention to the representations made on the Application and the Amendment. (D.I. 1 at ¶ 54) Plaintiff claims that it issued the policy in reliance upon those representations and, if so, it did so to its detriment because had the Application been truthful, plaintiff would have issued a lower face value policy or no policy at all. (D.I. 1 at ¶¶ 55, 57, 59)

## 2. Knowledge and belief standard

In his opening brief in support of the motion to dismiss, the Trustee also argues that plaintiff failed to plead any allegations that the Trustee was in a position to **know** that the information in the Application was false. (D.I. 8 at 27) This argument was made based on the wording in plaintiff's complaint, which misquoted the Application's agreement and acknowledgement clause in part: "All statements and answers in this application are correctly recorded, and are full, complete and true **to the best of my knowledge and belief**." (D.I. 1 at ¶ 56) (emphasis added) The relevant clause actually read: "All statements and answers in this application are correctly recorded, and are full, complete and **true**." (D.I. 8, ex. 1 at Application p.8, ¶ 6) Therefore, the above argument is moot because the Trustee signed the Application stating the representations were all true, rather than only believing them to be true.

standards for proving fraud claims under federal securities law and under Delaware state law are similar." *Brug v. Enstar Group, Inc.*, 755 F. Supp. 1247, 1259 (D. Del. 1991).

19

A new related issue arises, however: whether plaintiff should properly be permitted to amend its complaint to fix the apparent misquote. The Trustee argues in its reply brief that plaintiff cannot amend its complaint in order to **contradict** its original allegations because doing so would "change stride in the middle of [the] litigation and disavow the allegations . . . solely to survive a motion to dismiss." *ABS Indus., Inc. v. Fifth Third Bank*, Civ. No. 3:07CV1339, 2008 WL 2185378, at \*3 (N.D. Ohio May 23, 2008), *aff'd*, 333 F. App'x 994 (6th Cir. 2009). However, as noted *supra*, the court may properly consider the Amendment as part of the contract for purposes of the motion to dismiss and, absent a showing of bad faith, the court may freely use its discretion to grant a party leave to amend its complaint. *See* Fed. R. Civ. P. 15; *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant . . . the leave sought should, as [Rule 15] require[s], be 'freely given.'") Because the Application itself is attached as an exhibit in the record and there has been no showing of bad faith on plaintiff's part, the court will allow leave for plaintiff to amend its complaint to correct the misquote.

### 3. Particularity of pleadings

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ." While plaintiff does not dispute the application of the heightened requirement to its fraud claims, it does contend that the heightened pleading requirement does not apply to its negligent misrepresentation claim. "Although there is a dearth of case law, the Rule 9(b) heightened pleading requirement generally does not apply to the state law claims of . . . negligent misrepresentation." *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 197 (D. Del.

20

2000) (citation omitted).  Therefore the court will only examine the fraud and material misrepresentation claims under the Rule 9(b) heightened pleading standard.  As applied to these claims, plaintiff has sufficiently pled facts to allege fraud with particularity.

The Trustee argues that plaintiff failed to allege, under the heightened pleading standard for fraud claims, that:  (1) the Trustee was in a position to know that he was making false statements; (2) the Trustee had an incentive to misrepresent facts; and (3) the Trustee gained a benefit by making the alleged misrepresentations.  Generally, a fraud allegation is legally sufficient if it pleads the "circumstances" of the fraud so as "to place the defendants on notice of the precise misconduct with which they are charged." *Vietnam Veterans of Am., Inc. v. Guerdon Indus., Inc.*, 644 F. Supp. 951, 959 (D. Del. 1986) (citation omitted).  "Rule 9(b) does not require the recitation of every material detail of the fraud such as date, location and time[; however,] plaintiffs must use alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  *In re Student Fin. Corp.*, 2004 WL 609329, at *1 (D. Del. Mar. 24, 2004) (citation omitted) (alteration in original).  Nothing in Rule 9(b) requires specific types of details to be pled, such as what the Trustee might have gained from the alleged fraud.[12]  *See Klein v. Gen. Nutrition Co.*, 186 F.3d 338, 345 (3d Cir. 1999) (stating that the minimum pleading threshold of Rule 9(b) is "that the plaintiff identify the speaker of the fraudulent statements.").

---

[12] The Trustee relies on a Delaware Court of Chancery case for its assertion that an allegation of fraud also requires a plaintiff to plead facts referring to what a defendant gained from making the misrepresentation.  *See Trenwick Am. Lit. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 207-08 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Trust v. Billet*, 931 A.2d 438 (Del. 2007).  However, the court in *Trenwick* was interpreting Court of Chancery Rule 9(b) under state common law, not Federal Rule of Civil Procedure 9(b).

21

The plaintiff has pled the following facts averring fraud by the Trustee:  (1) the alleged STOLI scheme called for the establishment of the Trust that would become the record owner and beneficiary of the Wisner Policy (D.I. 1 at ¶ 45); (2) the Trust, from the outset, was intended for transfer on the secondary market, not for estate liquidity, financial planning, or other legitimate insurance-related purposes (*Id.*); (3) the Trust was used to conceal the true purpose of the Wisner Policy (*Id.*); (4) the premiums, which are alleged to have been funded by stranger investors, were paid from an account in the Trust's name (*Id.* at ¶¶ 54, 60); (5) Wisner and the Trustee both represented to plaintiff, in both the Application and the related Amendment, that they had not been involved in any discussion regarding possible sale or transfer of the policy, which plaintiff alleges is false (*Id.* at ¶¶ 53, 80, 94-95); (6) the Trustee, as the proposed owner of the Wisner Policy, signed the Application declaring everything in it was complete and true (*Id.* at ¶¶ 54, 56; D.I. 8, ex. 1 Application at 8, ¶ 6); and (7) the misrepresentations were made in order to intentionally conceal the alleged STOLI scheme and to secure a higher face value for the policy (*Id.* at ¶¶ 55, 80-81, 103; D.I. 8, ex. 1 at Application p.8, ¶ 6).[13] Thus, plaintiff has clearly identified the Trust as a party in the fraud and has alleged sufficient circumstances to put the Trustee on notice of the particular instances of fraud at issue.

As noted *supra*, the prima facie elements of common law fraud and misrepresentation under Delaware law are: "(1) a false representation, usually one of

___

[13] Plaintiff seems to assert that its allegations in D.I. 1 at ¶¶ 43-44 also support its fraud claims against the Trustee. (D.I. 14 at 35) However, those paragraphs refer to "the STOLI Promoters" soliciting investors for the Wisner Policy, and "the STOLI Promoters" are explicitly defined as Strauss and Fink. (D.I. 1 at ¶ 35) Therefore, none of the allegations in the complaint that refer to "the STOLI Promoters" apply to the Trustee.

22

fact, made by the defendant; (2) the defendant's 'knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as the result of such reliance." *Stephenson v. Capano Development, Inc.*, 462 A.2d 1069, 1074 (Del. 1983). Plaintiff has adequately pled elements four and five, as discussed *supra*. The first element, false representation, is sufficiently pled by all the alleged misrepresentations in the Application (pertaining to Wisner's income, net worth, participation in a secondary market scheme, and purpose for the policy), which the Trustee signed and declared was true. The second element, the Trustee's knowledge that the representation was false, is plausibly inferred from the alleged facts that the STOLI scheme called for the establishment of the Trust, the investor-funded premiums were paid from the Trust, and the Trust was used to purposefully conceal the true nature of the Wisner Policy. Together, when viewed in the light most favorable for the non-moving party, these allegations reflect possible informed participation by the Trustee in the purported fraud and misrepresentations. The final element, an intent to induce the plaintiff to act, is adequately pled by the facts relating to the Trustee's desire to induce plaintiff to issue a high face value policy based on the misrepresentations. Therefore, the Trustee is on notice of the precise misconduct that the fraud and misrepresentation claims charge, and plaintiff has met the Rule 9(b) heightened pleading standard.

### 4. Time bar

The Trustee urges the court to dismiss plaintiff's fraud and misrepresentation claims by asserting the claims are time-barred. The statute of limitations for fraud and

23

negligent misrepresentation in Delaware is three years. 10 Del. C. § 8106 (2010). The statute of limitations "is calculated from the time of the wrongful act even if plaintiff is ignorant of the cause of action," which means the statute of limitations for the present case expired on September 12, 2009, three years after the allegedly fraudulent Application was submitted to plaintiff. *See Krahmer v. Christie's Inc.*, 911 A.2d 399, 407 (Del. Ch. 2006). The present action was not filed until November 20, 2009. Thus, plaintiff's fraud and misrepresentation claims would be barred unless the statute of limitations period was tolled.

Delaware law allows the statute of limitations to be tolled "[w]here the defendant has acted to affirmatively conceal the wrong." *EBS Litig. LLC v. Barclays Global Investors, N.A.*, 304 F.3d 302, 305 (3d Cir. 2002). Under the fraudulent concealment doctrine of tolling, a plaintiff must show that a defendant "knowingly acted to prevent plaintiff from learning facts or otherwise made misrepresentations intended to put [] plaintiff off the trail of inquiry." *Krahmer*, 911 A.2d at 407 (quoting *State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513, 531 (Del. Ch. 2005)) (internal quotations omitted). Fraudulent inducement thus requires a showing that the Trustee **affirmatively** acted to conceal the fraud in question. *Id.* The statute of limitations would then be tolled only until plaintiff discovers or, exercising reasonable diligence, could have discovered its injury. *Id.*; *see also EBS Litig.*, 304 F.3d at 305 (calculating tolling the same way under Delaware law). Without tolling, plaintiff's present action would be a little over two months late. However, the court finds that plaintiff sufficiently alleges facts that, if proven, would toll the statute of limitations.

The main point of contention in this regard is whether plaintiff sufficiently pled facts pointing to the Trustee's affirmative concealment after the issuance of the Wisner

24

Policy. In *Smith v. Mattia*, Civ. No. 4498-VCN, 2010 WL 412030, at *5 (Del. Ch. Feb. 1, 2010), the Delaware Court of Chancery, on a motion to dismiss, found that defendant home buyers had pled sufficient facts against plaintiff construction company to toll the statute of limitations on grounds of fraudulent concealment. The home buyers in *Smith* alleged that the construction company fraudulently induced them to approve draws upon a construction loan for which the funding never went toward the construction of their house. *Id.* The court found that this fact alone, if proven, was sufficient to toll the start time of the statute of limitations. *Id.* Similarly, plaintiff in the present case has alleged that it received premiums on the Wisner Policy which were not from the purported source. If plaintiff's allegation that the Wisner Policy premiums were financed or funded by stranger investors is true, then it may be inferred that the payment of the premiums through the Trust was one method of concealing the alleged STOLI nature of the policy. (D.I. 1 at ¶¶ 54, 60-61) This inference is plausible, given that the Trustee declared that "[t]he premiums are not being advanced, loaned or financed by a third party" in the Amendment. (D.I. 8, ex. 2) The transactions in question were completed between October 12, 2006 and April 18, 2008; the statute of limitations would be tolled until April 18, 2008.

Moreover, the Trustee cannot use the statute of limitations as a shield in light of the fraud allegations. The fraudulent concealment doctrine for tolling rests on the premise "that defendants should not be permitted to use a limitations period as a shield when they have engaged in fraudulent acts that have denied plaintiffs the opportunity to timely discover the alleged wrongs." *Litman v. Prudential-Bache Properties, Inc.*, Civ. No. 12137, 1994 WL 30529, at *3 (Del. Ch. Jan. 14, 1994). Thus, it would be

25

inappropriate for the court at this time to dismiss plaintiff's fraud and misrepresentations claims as time barred.[14]

## E. Appropriateness of Negligent Misrepresentation Claim

Finally, the Trustee contends that plaintiff's action for negligent misrepresentation should be dismissed because the nature of the alleged misrepresentation requires proof of an intentional or knowing act. Contrary to this contention, however, a negligent misrepresentation does not require a knowing or intentional state of mind. Instead, it only requires: "(1) a pecuniary duty to provide accurate information; (2) the supplying of false information; (3) failure to exercise reasonable care in obtaining or communicating the information; and (4) a pecuniary loss caused by justifiable reliance upon the false information." *Grunstein v. Silva*, Civ. No. 3932-VCN, 2009 WL 469841, at *14 (Del. Ch. Dec. 8, 2009); *see also Outdoor Techs., Inc. v. Allfirst Fin.*, Inc., Civ. No. 99C-09-151-JRS, 2001 WL 541472, at *5 (Del. Super. Apr. 12, 2001); *Student Fin. Corp. v. Royal Indem. Co.*, 2004 WL 609329, at *3. Plaintiff has adequately pled that the Trustee: (1) signed the Application and Amendment as the proposed owner of the Trust (D.I. 1 at ¶ 52; D.I. 8, ex. 2); (2) supplied false financial and other information on both the Application and Amendment (*Id.* at ¶ 94); (3) failed to exercise reasonable care in communicating the relevant information (*Id.* at ¶ 96); and (4) induced plaintiff to reasonably rely on the alleged misrepresentations and issue the Wisner Policy at a high face value, which it otherwise might not have done (*Id.* at ¶¶ 55, 59, 98). Given the language of the Application's agreement and acknowledgement clause ("All statements

---

[14] Although plaintiff's claims have survived the early assertion of the Trustee's time-bar defense, the defense raises substantial issues for further analysis after discovery. "It is not so much that [the defense is] without merit as it is that a motion to dismiss is not the most useful device for presentation of affirmative defenses." *See Smith*, 2010 WL 412030 at *6, n.46.

26

and answers in this application are correctly recorded, and are full, complete and true"), there is no need for plaintiff, in its negligent mispresentation claim, to prove that the Trustee **knew** the representations were false.  Thus, plaintiff has adequately pled its action for negligent misrepresentation.

### F. Striking Allegations

The Trustee urges the court to strike several of plaintiff's allegations, including: (1) allegations based on the Amendment; (2) plaintiff's request to retain premiums; (3) plaintiff's request for attorney fees; and (4) plaintiff's request for punitive damages.  As discussed *supra*, it is not improper for the court to consider the substance of the Amendment on this motion, so the court will begin by addressing plaintiff's request to retain premiums.

#### 1. Plaintiff's request to retain premiums

In the event the Wisner Policy is rescinded for being voidable or void ab initio, plaintiff seeks to retain some or all of the premiums it obtained from the policy.  Plaintiff asserts that Delaware law does not require an insurer to return premiums paid thereon in order to have a policy declared void, while the Trustee asserts that an election of remedies prevents an insurer from both rescinding a policy and retaining the premiums.

The court agrees with the Trustee on this issue.  This court has previously held that rescission of benefit increases on a life insurance policy requires the insurer to refund premiums.  *Oglesby v. Penn Mut. Life Ins. Co.*, 877 F. Supp. 872, 890 (D. Del. 1994).  Other Delaware courts have also held that rescission is an equity claim that requires all parties to be returned to the status quo.  *See Strassburger v. Early*, 752 A.2d 557, 578 (Del. Ch. 2000) (returning the parties "to the position they occupied before the challenged transaction"); *see also Sannini v. Casscells*, 401 A.2d 927, 927

27

(Del. 1979) (finding that election of remedies in equity precludes inconsistent judgments). Plaintiff cites Delaware cases purportedly supporting its position that it can retain premiums on a rescinded policy, but a closer inspection reveals that those courts allowed damages to be awarded, not premiums to be retained. *See Creative Research Manufacturing*, Civ. No. 1211-A, 2007 WL 286735, at *10 (Del. Ch. Jan. 30, 2007) (awarding "operating costs and out-of-pocket expenses" incurred by plaintiff in equitable rescission action); *Martin Newark Dealership, Inc. v. Grube*, Civ. No. 97-11-064, 1998 WL 1557485, at *4 (Del. Ct. Com. Pl. Dec. 22, 1998) (allowing a plaintiff to be awarded "money or other property of which it has been deprived."). "The payment . . . [of] premiums is the consideration for which the insurer agrees to assume the risk specified in the policy." Couch on Insurance § 69:2 (3d ed. 1996). If an insurance company could retain premiums while also obtaining rescission of a policy, it would have the undesirable effect of incentivizing insurance companies to bring rescission suits as late as possible, as they continue to collect premiums at no actual risk.

Therefore, although plaintiff may properly seek damages for expenses incurred as a result of the Trustee's alleged conduct,[15] the court dismisses plaintiff's claim seeking retainment of premiums in light of the fact that it also seeks to rescind the Wisner Policy. In an equitable action such as this, plaintiff may not have it both ways.[16]

---

[15] Pursuant to this reasoning, the court also denies the motion to dismiss regarding the Trustee's argument that plaintiff cannot simultaneously seek to rescind the contract and seek damages on that same contract.

[16] Plaintiff may not simultaneously seek rescission of the policy **and** retainment of the premiums. In the event the Wisner Policy is held to be valid, plaintiff may retain the premiums pursuant to the contract terms.

## 2. Plaintiff's request for attorney fees

Absent a relevant federal statute, state rules generally determine the award of attorney fees in diversity cases. *See Montgomery Ward & Co., Inc. v. Pac. Indem. Co.*, 557 F.2d 51, 56-57 (3d Cir. 1977). Delaware follows the American rule where, absent a statute or contract to the contrary, "prevailing litigants are responsible for the payment of their own attorney fees." *Goodrich v. E.F. Hutton Group, Inc.*, 681 A.2d 1039, 1043-44 (Del. 1996). "In the ordinary adversary litigation the losing party is not assessed the counsel fees of his opponent unless the action was fraudulent." *Wilmington Trust Co. v. Coulter*, 208 A.2d 677 (Del. Ch. 1965); *see also Gans v. MDR Liquidating Corp.*, Civ. No. 9630, 1998 WL 294006, at *3 (Del. Ch. May 22, 1998) (listing "fraud, bad faith, or other outrageous conduct from which the claim arose" as a special basis for which a court may award attorney fees); *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164 (Del. 1989) ("Under the 'equity' exception a litigant may secure an award of counsel fees upon a showing of bad faith by an opposing party.") (citing *Division of Child Support Enforcement v. Smallwood*, 526 A.2d 1353, 1356-57 (Del. 1987)).

The decision to award attorney fees under a special circumstance such as fraud or bad faith is a discretionary one left to the court. *See Gans*, 1998 WL 294006 at *3. As such, the court will only make this determination after all the facts have been determined through discovery and will not strike plaintiff's request for attorney fees at this stage of the proceedings.

## 3. Plaintiff's request for punitive damages

In Delaware, "[p]unitive damages are only awarded in situations of 'willful and outrageous' conduct that flows from 'evil motive or reckless indifference to the rights of others.'" *Segovia v. Equities First Holdings, LLC*, C.A. No. 06C09-149-JRS, 2008 WL

2251218, at \*24 (Del. Super. May 30, 2008) (citation omitted); *see also Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1076-77 (Del. 1983) (awarding punitive damages is proper only "[i]f the fraud is gross, oppressive, or aggravated, or where it involves breach of trust or confidence . . . ."). Like the award of attorney fees, the court cannot determine whether the Trustee's actions constitute "willful and outrageous" conduct or "gross fraud" at this point in the litigation; therefore, the motion to strike plaintiff's request for punitive damages is denied.

## V. CONCLUSION

For the aforementioned reasons, the court grants in part and denies in part the Trustee's motion to dismiss or, in the alternative, to strike certain allegations. Plaintiff has sufficiently pled grounds for declaratory judgment and facts for fraud, misrepresentation, and negligent misrepresentation. The court grants the Trustee's motion to strike plaintiff's claim to retain premiums on the Wisner Policy in the event of rescission. An appropriate order shall issue.